Argued October 14; affirmed November 10; rehearing denied
December 13, 1938

# MORSE *v.* GOLD BEACH WATER, LIGHT & POWER CO.

(84 P. (2d) 113)

*Joseph McKeown,* of Marshfield (L. A. Liljeqvist, Bennett, Swanton, and Joseph McKeown, all of Marshfield, on the brief), for appellant.

*Collier H. Buffington,* of Gold Beach, for respondent.

BELT, J. For the past twenty-five years Gold Beach Water, Light & Power Company has been engaged as a public utility in furnishing water to the people of Gold Beach and vicinity. Water is obtained from the middle and north forks of Riley creek, a small stream which flows westerly and empties into the

ocean a short distance south of Gold Beach. Plaintiff's water source is Cunniff creek and Gauntlett creek, two small streams about one mile north of Riley creek and flowing in the same general westerly direction.

On July 30, 1930, Gold Beach Water, Light & Power Company filed an application with the state engineer to appropriate one cubic foot per second of the waters of the south fork of Riley creek for domestic and municipal purposes. This application was approved by the state engineer and a permit issued on November 10, 1930, requiring that actual construction work begin on or before November 10, 1931; that the project be thereafter prosecuted with reasonable diligence and be completed on or before October 1, 1932. Three extensions of time to the defendant company for complete application of the water to beneficial use were made by the state engineer—the last extending to October 1, 1935. In 1931, the company enlarged its reservoir, then being used for storing water from the main and north forks of Riley creek, in order, as it asserts, to store the waters of the south fork of Riley creek, thereby increasing the capacity of the plant. However, no actual construction work was done on the south fork itself by building a dam for diversion of its water or laying pipes to make any physical connection with its water system until after plaintiff had made application for appropriation of .25 cubic feet per second of the waters of the south fork of Riley creek in April, 1935. In other words, it was after the plaintiff had been issued a permit to make an appropriation that the defendant first exercised any diligence to apply the waters of the south fork to a beneficial use.

When the defendant company, in August, 1935, actually laid its pipe from the diversion dam on the south

fork to connect with a pipe line leading to the reservoir on the middle fork, the plaintiff, on August 24, 1935, filed a protest with the state engineer against such appropriation, asserting that "the proposed appropriation has never been carried out nor any attempt whatsoever made to complete the work thereunder, and that the proposed application for extension is based upon a statement that the applicant had constructed a reservoir at a cost of $1,590.32, when as a matter of fact said reservoir was used in connection with use of other water rights and not for the purpose of carrying out this application or as a part thereof," and that the issuance of the water certificate to the defendant would result in depriving the plaintiff of water appropriated by him for the beneficial use of the people of Gold Beach.

The state engineer, after hearing and an inspection of the premises, made an order on April 22, 1936, cancelling the defendant company's permit for the reason that "the only actual construction work which had been started on or before November 10, 1931, was the reconstruction of a reservoir built several years previously in connection with a different water right on the 'main fork' of Riley Creek and the construction of a new reservoir alongside the aforesaid reservoir, which reservoirs were completed during the year of 1931, both being used to store water from the 'main fork' of Riley Creek," and that such work did not comply with the statute requiring actual construction work to begin within one year from date of approval of the application for a permit. Defendant appealed from such order to the circuit court and, after hearing and inspection of the premises, the trial court sustained the order of the state engineer. Hence this appeal.

■ The vital question in this case is whether the construction work on the reservoir of the defendant, on the middle fork of Riley creek, complies with the mandatory provisions of the statute. We agree with the state engineer and the lower court that it does not. Section 47-506, Oregon Code 1930, provides:

"Actual construction work  *  *  *  shall begin within one year from the date of approval of the application, and the construction of any proposed irrigation or other work shall thereafter be prosecuted with reasonable diligence and be completed within a reasonable time, as fixed in the permit, not to exceed five years from the date of such approval  *  *  *."

Further provision is made in the statute for extension of time by the state engineer for completion of the appropriation when the applicant has established good cause for so doing. The discretion which is vested in the engineer for extension of time has no application, however, to the mandatory terms of the statute requiring actual construction work to begin on the project within one year from date of approval of the application for a permit. The permit is issued on the condition that the appropriator will comply with the terms of his application, viz., commence actual work within the above specified time. If he does not do so it is fatal to completion of the appropriation, although reasonable diligence may have been exercised after the one-year period. The right given by the permit is merely a contingent right which may ripen into a complete appropriation, or may be defeated by the failure of the holder to comply with the requirements of the statute: Wiel on Water Rights (3d. Ed.) § 417, as stated in 67 C. J. 999:

"Where commencement of work on the projected appropriation, within a stated period after notice or

permit, is required, on expiration of such time without anything having been done, the rights under the notice or permit lapse * * *''

The statute does not state the amount of construction work required within the year following date of approval of application, but we think it is the reasonable intendment of the act that the construction work must be so substantial in character as to manifest good faith and the intent to exercise reasonable diligence in the completion of the project.

We think it a fair inference from the record that at the time the defendant company applied for a permit to appropriate waters of the south fork it was more concerned in depriving its competitor of water than in obtaining water for its own system. The main fork of Riley creek had an ample flow of water for all the customers of the defendant. In September, 1932, the defendant made application for a loan from the Federal Reconstruction Finance Corporation for the purpose of improving its water system on the main fork. The funds sought ($6,935.98) were to be used in supplanting its 2-inch water pipes leading from diversion point to reservoir by installing six-inch water pipes. In this application the defendant, upon oath, stated that ''there is an ample supply of water available from the stream now being used (middle fork) for its'' then 127 consumers. Upon failure to obtain the loan, the company enlarged its reservoir. It is significant concerning this application for a federal loan that none of the funds were to be used in completion of the south fork project.

■ There are other facts and circumstances tending to show that the defendant, in seeking to appropriate water from the south fork, was not undertaking in

good faith to apply such water to a beneficial use, but we see no need of filling the reports with an extended recital of the evidence. The findings of the state engineer, while not conclusive, are highly persuasive in the determination of the question under consideration.

The decree is affirmed. Plaintiff is entitled to costs and disbursements.

RAND, BAILEY and LUSK, JJ., concur.